UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNTHIA M. MCCLOUD,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. C17-5290-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Cynthia Marie McCloud proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1968.[1] She has a tenth-grade education and a GED, and has

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

worked as a cleaner, in-home caregiver, and temporary laborer. (AR 43-45, 246.)

Plaintiff protectively applied for SSI and DIB in May 2013. (AR 193-208, 241.) Those applications were denied and Plaintiff timely requested a hearing. (AR 135-41, 144-48.)

On August 3, 2015, ALJ Kelly Wilson held a hearing, taking testimony from Plaintiff and a vocational expert. (AR 38-77.) On December 30, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 13-31.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on February 17, 2017 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2008, the alleged onset date. (AR 15.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's affective disorder, anxiety disorder, personality disorder, and attention deficit hyperactivity disorder. (AR 15-18.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 18-20.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing work at all exertional levels, with the following additional limitations: she can perform simple tasks of reasoning level 1-3, but cannot perform more complex tasks consistently. She can have superficial contact with the public (i.e. she can be around the public and interact with them briefly, but should not work in customer service, sales, or counter-type work). She can work in proximity to coworkers and supervisors, with brief interaction, but would do better in more solitary work tasks. (AR 20.) With that assessment, the ALJ found Plaintiff able to perform past relevant work as cleaner – housekeeper, auto detailer, and cleaner – institutional. (AR 30-31.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Because the ALJ found Plaintiff capable of performing past relevant work, the ALJ did not proceed to step five. (AR 31.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting her subjective symptom testimony, (2)

assessing certain medical opinions, and (3) assessing lay evidence.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Subjective symptom testimony

The ALJ discounted Plaintiff's subjective testimony for a number of reasons, including (1) Plaintiff claims to be disabled since 2008, but did not receive any mental health treatment prior to 2013, yet she sought treatment for physical issues during that time period; (2) clinical observations and Plaintiff's reported activities are inconsistent with her allegations of severe social difficulties and panic attacks; (3) the record contradicts Plaintiff's allegations of severe deficits as to concentration, persistence, and pace; (4) Plaintiff's mental symptoms improved once she started receiving treatment; and (5) Plaintiff made many inconsistent statements, regarding her work attempts, substance abuse, whether she lived with her husband, and whether she can leave her house alone. (AR 20-25.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues first that the ALJ erred in finding that her lack of mental health treatment undermined her allegations of disabling mental symptoms without asking her why she did not receive treatment. Dkt. 15 at 8. The Social Security Ruling (SSR) in effect at the time of the ALJ's decision, which Plaintiff cites for the proposition that the ALJ was required to ask her why she did not receive treatment for so many years, does not impose such a requirement. *See* SSR 96-7p, 1996 WL 374186, at *7-8 (Jul. 2, 1996). SSR 96-7p instructs ALJs to consider reasons provided by the claimant or evident from the record that could explain the lack of treatment. *Id*.

---

[2] Plaintiff's opening brief also challenges the ALJ's RFC assessment and step-five findings, but in doing so only reiterates arguments made elsewhere. Dkt. 15 at 16-17. Accordingly, these issues will not be analyzed separately.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

Plaintiff offered no explanation for her lack of treatment, and did not offer any explanation to clinicians. (*See* AR 547 (DSHS reviewer: "[Plaintiff] has also never bothered to get [mental health] treatment in the past which is also a complicating factor since she has been on welfare in the past and that is the reason she gives for not being able to work.")). There is no evidence that Plaintiff's lack of treatment for mental health issues was the result of any factor other than her personal preference, and therefore the ALJ reasonably construed Plaintiff's lack of treatment as undermining her allegations of disabling mental limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

Plaintiff also objects to the ALJ's identification of clinical findings that undermine her allegations of severe social limitations, contending that an ALJ is not entitled to reject testimony solely because objective evidence does not support the allegation. Dkt. 15 at 9. But the ALJ identified evidence that contradicted Plaintiff's allegations, rather than merely failed to corroborate it. For example, the ALJ cited clinical findings describing Plaintiff as friendly, cooperative, pleasant, with good eye contact. (AR 21.) The ALJ also noted that even when providers noted that Plaintiff was fidgety or agitated, she could nonetheless interact. (*Id.*) The ALJ did not err in considering whether Plaintiff's alleged extreme social limitations were contradicted by the medical record. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Although Plaintiff conclusorily states that her clinical findings "are in fact reasonably consistent with her testimony[,]" she does not cite any particular evidence and does not show that the ALJ's findings are not reasonable. Dkt. 15 at 9. Accordingly, Plaintiff has not established error in the ALJ's reasoning.

Furthermore, the ALJ noted that Plaintiff was able to attend church, go to the casino, and

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 5

go to the library, which was inconsistent with her testimony that she could not be around other people and did not do well in public. (AR 19, 21.) This finding supports the ALJ's assessment of Plaintiff's testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). Plaintiff notes that she reported that her social interactions "are mostly limited to family members" (Dkt. 15 at 9 (citing AR 514)), but this self-report does not address the activities cited by the ALJ that involve others beyond family members, and thus does not establish error in the ALJ's reasoning.

Next, Plaintiff argues that the ALJ erred in considering whether her allegations of concentration, persistence, and pace deficits were consistent with the record, because those allegations could not be rejected solely based on a lack of supporting objective evidence. Dkt. 15 at 9. But the ALJ cited evidence that contradicted Plaintiff's allegations of disabling limitations, and this consideration is proper. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Furthermore, the ALJ also cited Plaintiff's activities — such as riding a bike to appointments, using public transportation, working part-time since the alleged disability onset, and using the library and computers — as evidence that Plaintiff's deficits as to concentration, persistence, and pace were not disabling. (AR 21-22.) The ALJ reasonably concluded that Plaintiff's ability to perform these activities, that arguably require more concentration and persistence than she alleged she retained, undermined her statements about the limiting effects of her impairments.

The ALJ also cited Plaintiff's improvement with mental health treatment as a reason to discount her testimony about the limiting effects of her impairments. (AR 22.) Plaintiff argues that this "is not a convincing reason to reject [her] testimony about the symptoms and limitations

she has continued to experience even with the treatment." Dkt. 15 at 10. But the ALJ cited Plaintiff's statements that she felt "much more stable" on medication, that she was able to participate in more activities, that her medication helped her moods and focus, and that she was doing well and felt less anxious. (AR 22 (citing AR 614, 616-17, 678, 681).) Plaintiff does not cite any portion of the record that contradicts the ALJ's findings, and thus has not shown that the ALJ erred in finding that the evidence showed improvement with medication or in discounting Plaintiff's testimony on that basis. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects").

Next, the ALJ noted that Plaintiff reported to a housing advocate that her criminal history was a barrier to employment. (AR 22 (citing AR 322).) The ALJ found this statement undermined Plaintiff's application for disability, because a person is eligible for disability if his or her unemployment is primarily caused by his or her impairments. (AR 23.) Plaintiff argues that "there is no evidence that this is the main reason [she] is not working[,]" and that may be true. Dkt. 15 at 10. But the ALJ did not state that it was, and did not err in finding that Plaintiff's allegation of disability was undermined by her reference to her criminal history as a barrier to employment, given that Plaintiff did not apparently cite any other barriers to employment in this conversation with her housing advocate. (AR 322.) Plaintiff's statement undermines her allegation of disability, even if it does not conclusively prove that she is not entitled to benefits. *See* SSR 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982) ("A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work.").

1   The ALJ also cited Plaintiff's inconsistent and inaccurate reports of her substance use. (AR
2   23.) Plaintiff argues that this is not a convincing reason to reject all of her testimony, but the Ninth
3   Circuit has found that such inconsistencies are a valid reason to discount a claimant's subjective
4   reports. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

Next, the ALJ noted that at the time Plaintiff applied for benefits, she stated that she was not living with her husband (even though the record indicates that she was), and her husband's income would have been material to her eligibility for SSI. (AR 23.) The ALJ found that Plaintiff's inaccurate reporting undermined her allegations. (*Id*.) Plaintiff emphasizes that the record indicates that she did not always live with her husband, but does not address the specific inconsistencies identified by the ALJ, which suggest that Plaintiff was living with her husband at the same time she declared under penalty of perjury that she lived alone. Dkt. 15 at 10. Whether she lived with her husband at other times is not relevant to the ALJ's finding, and the ALJ herself acknowledged that Plaintiff's husband eventually did live separately. (AR 23.) Thus, Plaintiff's statement that she did not always reside with her husband does not establish error in the ALJ's finding regarding Plaintiff's living situation at the time of her benefits application.

Lastly, the ALJ cited Plaintiff's hearing testimony regarding her need to sleep most of the time, or stay in bed most days. (AR 23-24.) The ALJ found that the record showed that when Plaintiff was compliant with treatment, she was not as sedated as she described at the hearing. (AR 24.) The ALJ acknowledged that Plaintiff reported fatigue one time while she was receiving treatment, but that her providers switched her medication as a result. (AR 24 (citing AR 681).) This is a clear and convincing reason to discount Plaintiff's testimony regarding her fatigue.

Plaintiff goes on to devote nearly four pages of her opening brief to a summary of her hearing testimony, but does not link this testimony to any of the ALJ's findings. Dkt. 15 at 10-14.

This portion of the brief does not establish any error in the ALJ's decision, and any argument that this testimony should be credited is undermined by Appeals Council evidence wherein Plaintiff reported to her counselor that she did not always tell "the honest truth" at her hearing because she was nervous and her attorney had upset her before the hearing. (AR 690.)

Because Plaintiff has not shown that the ALJ erred in discounting her subjective testimony, the ALJ's findings in this regard are affirmed.

### Medical evidence

Plaintiff challenges the ALJ's assessment of certain medical opinions, and the Court will address each disputed opinion in turn.

<u>Legal standards</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Kenneth A. Hapke, Ph.D.

Dr. Hapke performed a psychological evaluation of Plaintiff in November 2013, at a time when Plaintiff was not receiving mental health treatment. (AR 513-17.) Dr. Hapke's medical source statement reads in its entirety:

> Prognosis is deemed guarded for this 45-year-old claimant due to the chronic and debilitating nature of multiple symptoms of mental illness. At this time, the claimant's symptoms are untreated and her condition will likely deteriorate. There is strong evidence of antisocial personality features as well as neurocognitive dysfunction. Psychosocial stressors as well as significant impairment of memory function further challenge the claimant's ability to engage in substantial and gainful employment. Impairment of her memory skills would adversely impact any vocational re-training. For these reasons, it is unlikely that the claimant will be able to return to future substantial and gainful employment in the foreseeable future.

(AR 516-17.) The ALJ gave some weight to Dr. Hapke's opinion, but rejected his conclusion that it was unlikely Plaintiff could return to substantial and gainful employment as "too broad" because it lacked a function-by-function analysis and was outside Dr. Hapke's expertise. (AR 26.) The ALJ also noted that the State agency reviewing consultants considered Dr. Hapke's opinion and translated it and the remainder of the record into an opinion regarding Plaintiff's functional limitations. (*Id.*)

Plaintiff argues that the ALJ's reasoning is not legitimate because Dr. Hapke did not render a vocational opinion. Dkt. 15 at 3. Plaintiff is incorrect. Whether a claimant's limitations prevent work is indeed a vocational opinion. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity."). This situation is distinguishable from

*Hill v. Astrue*, cited in Plaintiff's reply brief (Dkt. 20 at 2), because in that case, the ALJ did not address a psychologist's opinion that a claimant's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely." 698 F.3d 1153, 1159-60 (9th Cir. 2012). The Ninth Circuit in *Hill* found that the psychologist's opinion should have been addressed by the ALJ, and did not place the quoted portion of the opinion in the context of the rest of the psychologist's opinion. *Id.* Thus, it is not clear whether the opinion in *Hill* was as broad as Dr. Hapke's opinion, and the Court there focused on whether it was an opinion that should have been addressed by an ALJ. *Id.* Under the circumstances of this case, where the ALJ addressed Dr. Hapke's opinion, the conclusory nature of his vocational opinion was a legitimate reason to discount the opinion.

The ALJ also noted that the State agency psychological consultants reviewed Dr. Hapke's opinion and found that Dr. Hapke's testing was not entirely reliable because it relied on Plaintiff's self-reporting, which lacked credibility. (AR 26.) The ALJ further commented that the State agency opinions were more specific as to Plaintiff's functional limitations than Dr. Hapke's opinion. (*Id.*) Although Plaintiff argues that the higher level of detail in the State agency opinions is not a reason to discount Dr. Hapke's opinion (Dkt. 15 at 3), the ALJ did not err in considering how the State agency consultants translated the findings of Dr. Hapke into concrete functional limitations. *See, e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172-74 (9th Cir. 2008).

Because the ALJ provided multiple specific, legitimate reasons to discount Dr. Hapke's opinion, the ALJ's assessment of that opinion is affirmed.

<u>Tasmyn Bowes, Psy.D.</u>

Dr. Bowes examined Plaintiff in January 2014 and February 2015, and completed DSHS form opinions after both examinations. (AR 523-46.) The ALJ summarized Dr. Bowes' opinions,

and discounted them because Dr. Bowes relied on Plaintiff's self-report, which was not entirely reliable, and was unaware of Plaintiff's "regular marijuana use." (AR 27.) The ALJ also noted that the State agency consultants found that Dr. Hapke's testing was inconsistent with Dr. Bowes' findings, and noted inconsistencies throughout Plaintiff's self-report. (*Id.*)

Plaintiff argues that the ALJ erred in finding that Dr. Bowes relied on her self-report (Dkt. 15 at 5), but Dr. Bowes did not review any other evidence (other than her own 2014 evaluation, at the time of the 2015 evaluation) and therefore had no other source of information about Plaintiff's symptoms. (AR 523, 534.) Most of the content of Dr. Bowes' opinions consists of self-reported statements in quotes. (AR 523-24, 534-36.) The ALJ did not err in discounting Dr. Bowes' opinions to the extent she relied on Plaintiff's self-report in reaching her conclusions. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). Dr. Bowes did not cite any objective findings to support her conclusions, and the mental status examination (MSE) results do not necessarily support the functional ratings she described. For example, the MSE results in 2014 and 2015 are identical, but the functional ratings are more severe in multiple categories in the 2015 opinion. (AR 526-28, 537-39.) The ALJ did not err in considering the extent to which Dr. Bowes relied on Plaintiff's self-reporting in reaching her conclusions, because the ALJ properly found that Plaintiff's subjective statements were not entirely reliable.

Plaintiff also contends that Dr. Bowes was "well aware" of her marijuana use, and Dr. Bowes' opinions indeed reference Plaintiff's marijuana use on "most days." (AR 524, 535.) The

Commissioner concedes that this portion of the ALJ's analysis is erroneous. Dkt. 19 at 15 n.2. This error is harmless, in light of the ALJ's other valid reason to discount Dr. Bowes' opinions.

Accordingly, the ALJ's assessment of Dr. Bowes' opinions is affirmed.

Other medical evidence

Plaintiff's opening brief contains a summary of medical evidence (Dkt. 15 at 5-7) that does not assign error to any portion of the ALJ's decision. The Court therefore need not address this evidence.

State agency opinions

Plaintiff argues that the ALJ erred in giving "significant weight" to the State agency opinions because they were inconsistent with medical evidence and the opinions of Drs. Hapke and Bowes. Dkt. 15 at 7. Plaintiff also argues that because the State agency consultants did not have the opportunity to review the entire record, their opinions should have been discounted. *Id*.

Because the ALJ properly discounted the opinions of Drs. Hapke and Bowes, as described *supra*, inconsistency between the State agency opinions and those opinions does not undermine the ALJ's decision. Furthermore, the ALJ had the opportunity to review the entire record, and indicated that she found the State agency opinions to be consistent with certain clinical findings as well as Plaintiff's activities. (AR 26-27.) Because the State agency opinions were not contradicted by all of the remaining evidence in the record, the ALJ did not err in failing to discount them. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Lay evidence

Plaintiff argues that the ALJ erred in assessing the lay evidence, specifically statements provided by agency personnel and Plaintiff's family members. An ALJ must provide germane reasons to discount lay statements. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Agency personnel

An agency interviewer described Plaintiff as a "VERY POOR historian with regard to both work history and medical history[.]" (AR 242.) The ALJ did not discuss this statement, and Plaintiff argues that this was error. But this statement is not "significant, probative evidence" rejected by the ALJ; indeed, it is consistent with the ALJ's finding that Plaintiff's subjective reporting contains many inconsistencies and inaccuracies. (AR 22-25.) Accordingly, the ALJ was not required to address the interviewer's description of Plaintiff's inability to describe her work and medical history. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that an ALJ "may not reject 'significant probative evidence' without explanation." (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))).

Plaintiff's sister and husband

Plaintiff's sister and husband submitted written statements describing Plaintiff's symptoms and limitations. (AR 286-93, 341.) The ALJ summarized these statements and found that they were inconsistent with the medical record in some ways, uncorroborated by the medical record in other ways, and inconsistent with Plaintiff's activities. (AR 29-30.) The ALJ also found that Plaintiff's sister and husband relied on Plaintiff's own subjective description of her symptoms, and the ALJ found that such statements were not entirely reliable. (AR 30.)

These are germane reasons to discount the lay statements. The ALJ gave examples of inconsistencies or lack of corroboration with the medical record, and explained how Plaintiff's activities contradicted the lay statements. (AR 29-30.) These reasons are sufficient. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports). Accordingly, the ALJ's assessment of the lay statements is affirmed.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 14

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 23rd day of February, 2018.

Mary Alice Theiler
United States Magistrate Judge